1

2

3

4                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
5                            AT TACOMA

6    WILLIE R.

7                          Plaintiff,            Case No. 2:18-cv-00924-MJP-TLF

8            v.                                  REPORT AND
                                                 RECOMMENDATION
     COMMISSIONER OF SOCIAL
9    SECURITY,                                   NOTED FOR JUNE 5, 2019

10                         Defendant.

11

12        Plaintiff has brought this matter for judicial review of defendant's denial of his

13   application for disability insurance benefits. This matter has been referred to the undersigned

14   Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. §

15   636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned

16   recommends that the Court affirm defendant's decision to deny benefits.

17                    FACTUAL AND PROCEDURAL HISTORY

18        Plaintiff filed an application for disability insurance benefits on September 24, 2014,

19   alleging he became disabled on April 29, 2014. Dkt. 6, Administrative Record (AR) 204-205.

20   Plaintiff's application was denied initially and upon reconsideration. AR 144-150, 152-156.

21   After a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on May 16,

22   2017. AR 12-27, 36-109. On April 27, 2018 the Appeals Council denied Plaintiff's request for

23   review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Plaintiff

24

25

1    appealed to this Court and seeks reversal and remand for an award of benefits. Dkt. 1; Dkt. 8, pp.

2    1-18.

3                                    STANDARD OF REVIEW

4             The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error;

5    or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648,

6    654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

7    accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir.

8    2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir.

9    1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the

10   evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

11            The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759

12   F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports,

13   and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the

14   decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified

15   by the ALJ are considered in the scope of the Court's review. *Id.*

16                                    ISSUES FOR REVEW

17       1.  Did the ALJ err in evaluating Plaintiff's subjective allegations?
         2.  Did the ALJ err in finding Plaintiff's tinnitus to be a non-severe
18           impairment at step two?
         3.  Did the ALJ err in rejecting opinions from treating and examining
19           sources?

20                                        DISCUSSION

21            The Commissioner uses a five-step sequential evaluation process to determine whether a

22   claimant is disabled. 20 C.F.R. §404.1520. Steps two, four and five are relevant to this case. At

23   step two, the ALJ must determine whether an impairment is "severe." 20 C.F.R. § 404.1520. The

24

25

1    Commissioner assesses a claimant's residual functional capacity (RFC) to determine whether the

2    claimant has the ability to perform past work (step four); if the claimant cannot perform past

3    relevant work then the ALJ reviews whether the claimant can adjust to other work (step five).

4    *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The Commissioner has the burden of

5    proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner can

6    meet this burden by showing that a significant number of jobs that the claimant can perform exist

7    in the national economy. *Id.*; 20 C.F.R. §404.1520(e).

8    I.    The ALJ's Evaluation of Plaintiff's Subjective Allegations

9            Plaintiff argues that the ALJ erred when evaluating Plaintiff's subjective allegations and

10   his testimony concerning his activities of daily living. Dkt. 8., pp. 16-18. Specifically, Plaintiff

11   alleges that the ALJ erred by finding that his allegations concerning his impairments were

12   inconsistent with the record. Plaintiff also challenges the ALJ's finding that Plaintiff's activities

13   of daily living were inconsistent with his allegation of disabling impairments, arguing that the

14   "short, sporadic activities" cited by the ALJ are not consistent with the activities necessary to

15   perform a full-time job. Dkt. 8, p. 17.

16           In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has

17   presented objective medical evidence of an underlying impairment. If such evidence is present

18   and there is no evidence of malingering, the ALJ can only reject Plaintiff's testimony regarding

19   the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763

20   F.3d 1154, 1163 (9th Cir. 2014).

21           Plaintiff did present objective medical evidence of underlying impairments. The physical

22   impairment at issue here is Plaintiff's tinnitus. Plaintiff first began complaining of tinnitus

23   related symptoms in October 2012, when Plaintiff's physician noted that he had subjective

24   tinnitus. AR 318. An audiology test conducted at that time revealed mild to moderate

25

1   sensorineural hearing loss but was otherwise normal. AR 325, 339. A tinnitus work up conducted

2   by Plaintiff's primary care physician conducted around this time was negative. AR 339.

3          Plaintiff underwent an audiology examination in October 2014. AR 471-473. An

4   otoscopic inspection conducted during this examination revealed that Plaintiff's external canals

5   were clear bilaterally, and a tympanometry test revealed normal middle ear pressures, ear canal

6   volumes, and tympanic membrane compliance bilaterally. AR 472. An audiogram conducted

7   during this examination revealed normal hearing through 2000 Hz, but then dropping to a

8   moderately severe high frequency sensorineural hearing loss consistent with noise-induced

9   hearing loss. AR 472. The audiogram also revealed that Plaintiff's word recognition ability was

10  100 percent at 75 dB HL in the right ear, and 96 percent at 75 dB HL in the left ear. AR 472.

11  During the examination, Plaintiff's physician had Plaintiff complete a Tinnitus Handicap

12  Inventory. AR 472. Based on this self-reported inventory, Plaintiff assessed himself a score of 86

13  out of a possible 100, which put him in the "catastrophic" tinnitus category. AR 472. Plaintiff's

14  physician noted that "catastrophic" tinnitus is always present, disturbs sleeping patterns, and

15  causes difficulty with any activity. AR 472.

16         At a follow-up tinnitus matching assessment in November 2014, Plaintiff most reliably

17  matched his tinnitus to be somewhat greater than 8000 Hz bilaterally, with Plaintiff's physician

18  noting that the earphones used by his office were incapable of testing frequencies higher than

19  8000 Hz. AR 467.

20         While the ALJ has not alleged that Plaintiff is malingering, the ALJ has provided

21  specific, clear and convincing reasons for rejecting Plaintiff's testimony concerning the extent of

22  the limitations caused by his tinnitus. In evaluating Plaintiff's subjective allegations, the ALJ

23  considered Plaintiff's hearing testimony, his self-described activities of daily living, and the

24

25

medical record. AR 19-25. The ALJ noted that while the Plaintiff testified to minimal activities

of daily living, the record indicated that he was more functional than he alleged:

> For instance, in December 2014, [Plaintiff] reported that he was able to complete
> activities of self-care independently. [Plaintiff] completed household chores
> including cooking, cleaning, and grocery shopping. [Plaintiff] prepared simple
> meals. [Plaintiff] managed his medications and finances. [Plaintiff] reported that
> he spends three hours daily reading. [Plaintiff] also used a computer for three
> hours daily. In February 2016, [Plaintiff] reported that he formally spent time at
> his avocation of fixing cares (sic) but indicated he lost his interest in this activity.
> [Plaintiff] testified that he went to Hawaii three years ago. [Plaintiff] also went to
> San Diego in 2014. [Plaintiff] and fiancé took their son to Legoland. [Plaintiff]
> stayed 4-5 days, went to the beach, and they had a rental care (sic). His fiancé did
> the driving. [Plaintiff] stated that he had tinnitus when he took his trips to Hawaii
> and San Diego.

AR 22 (citations omitted). The ALJ correctly found that many of these activities, particularly the

air travel, were inconsistent with Plaintiff's allegations of disabling tinnitus. AR 24-25, *see also*

*Gaddis v. Chater*, 76 F. 3d 893, 896-898 (8th Cir. 1996). (Affirming the ALJ's finding that

participation in loud activities such as motorcycle travel and shooting off fireworks was

inconsistent with an allegation of disabling tinnitus). The ALJ also noted that despite his

allegations, Plaintiff is able to maintain a rental property he owns, which provides Plaintiff with

$1,550 in monthly rental income. AR 20, 41-42.  Plaintiff testified that he can drive and drives

his car to see his counselor several times a month. AR 41, 247. The ALJ also noted

inconsistencies in the third-party function report filed by Plaintiff's fiancé, who stated that she

had to perform all the household chores, despite Plaintiff's statements that he could perform

these tasks himself. AR 24. As such, the ALJ's evaluation of Plaintiff's subjective complaints

was accompanied by specific, cogent reasons supported by substantial evidence.

II.  The ALJ's Step Two Determination

Plaintiff contends that the ALJ erred in finding his tinnitus to be a non-severe impairment

at step two of the sequential evaluation. Dkt. 8, p. 14. Specifically, Plaintiff alleges that the ALJ

1    "misread and/or mischaracterized" findings from audiologists to find that Plaintiff's tinnitus was

2    non-severe. *Id.* at 14-15.

3         At step two, an impairment is not considered to be "severe" if it does not "significantly

4    limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520

5    (c); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those

6    "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b); SSR 85-28, 1985

7    WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight

8    abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR

9    85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

10        In this case, the ALJ determined that Plaintiff had the severe impairments of headaches,

11   anxiety disorder, and depressive disorder. AR 17. In finding Plaintiff's tinnitus non-severe, the

12   ALJ noted Plaintiff's allegation that his tinnitus had worsened, but also observed that Plaintiff's

13   condition seemed more manageable when not in a stressful environment. AR 17. The ALJ then

14   evaluated the medical record, noting that:

15        [Plaintiff] testified that the ringing of his ears has worsened. [Plaintiff's] tinnitus
         seems more manageable when not in a stressful environment. However, when an
16       audiologist tested him, [Plaintiff] received a diagnosis of " subjective" tinnitus.
         The record shows that [Plaintiff] had a previous evaluation for tinnitus by primary
17       care physician with negative workup and demonstration of loss of high-pitched
         hearing otherwise normal workup. An October 2014 audiogram showed
18       moderately severe selective frequency sensorineural loss. [Plaintiff's] self-
         perceived rating on the Tinnitus Handicap Inventory was in the catastrophic
19       tinnitus severity category. In November 2014, audiologist Thomas Rees indicated
         that [Plaintiff] was a candidate for the fitting of selective high-frequency hearing
20       aids. It appears the [Plaintiff's] alleged tinnitus is based solely on his self-report
         due to minimal objective findings. However, the undersigned considered his
21       tinnitus-related complaints and compensates for them in the residual functional
         capacity.
22
     AR 17-18 (citations omitted). The ALJ's finding that tinnitus was a non-severe impairment is
23
     supported by substantial evidence. In addition to the results of the audiology examinations
24

25

1    discussed above, physical examinations of Plaintiff's ear canals and tympanic membranes were

2    generally normal. AR 319, 323, 336, 339, 351, 392, 411, 417, 571, 716. As recently as

3    September 2014, five months after Plaintiff's alleged onset date, Plaintiff still classified his

4    tinnitus symptoms as no more than "moderately" annoying. AR 329. Despite Plaintiff's moderate

5    hearing loss, he retained a 100 percent word recognition capacity in his right ear, and a 96

6    percent recognition capacity in his left ear. AR 472; *see also Brown v. Colvin,* No. ED CV 14-

7    01060-VBK, 2014 WL 7149545 at *3 (C.D. California, Dec. 12, 2014) (Finding that objective

8    medical evidence did not support Plaintiff's disabling tinnitus allegations when an audiologist

9    found Plaintiff had speech discrimination scores of 100 percent in the right ear and 96 percent in

10   the left ear). As such, the ALJ's finding that there were minimal objective findings to support

11   Plaintiff's tinnitus allegations is supported by the medical record.

12          Even if the ALJ had erred in finding Plaintiff's tinnitus non-severe, this would constitute

13   harmless error. The Ninth Circuit has "recognized that harmless error principles apply in the

14   Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout*

15   *v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006)

16   (collecting cases)).

17          In *Buck v. Berryhill*, the Ninth Circuit recent emphasized that in assessing the RFC, an

18   ALJ must consider limitations and restrictions imposed by all an individual's impairments, even

19   those that are not 'severe', and that an RFC should be precisely the same regardless of whether

20   certain impairments were found severe at step two of the sequential evaluation. 869 F.3d 1040,

21   1049 (9th Cir. 2017) (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial

22   Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). In

23   *Buck,* the Ninth Circuit concluded that because the ALJ decided step two in the claimant's favor

24

25

1    and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged

2    error is therefore harmless and cannot be the basis for a remand." *Id.* (citing *Molina v. Astrue*,

3    674 F.3d 1104, 1115 (9th Cir. 2012)).

4        In this case, the ALJ decided step two in Plaintiff's favor, finding that he had the severe

5    impairments of headaches, anxiety disorder, and depressive disorder. AR 17. Some courts have

6    distinguished *Buck* on the basis that the ALJ's RFC analysis showed that the ALJ did not

7    consider certain impairments in the RFC after finding them non-severe at step two. *See Mercado*

8    *v. Berryhill*, No. 16-CV-04200-BLF, 2017 WL 4029222, at *6 (N.D. Cal. Sept. 13, 2017);

9    *Winkle v. Berryhill*, No. C17-1633 TSZ, 2018 WL 5669018, at *2 (W.D. Wash. Nov. 1, 2018).

10   Here, despite finding Plaintiff's tinnitus non-severe, the ALJ included in the RFC a limitation

11   involving loud noises in the workplace to accommodate Plaintiff's reports of ringing in his ears.

12   AR 19, 24.

13   III.  The ALJ's Evaluation of the Opinion Evidence

14        Plaintiff next contends that the ALJ erred in his evaluation of the opinion evidence. Dkt.

15   8, pp. 4-14. Plaintiff contends that the ALJ improperly rejected the opinions of James

16   Vandermeer, M.D., Amit Grover, M.D., Patrick Dougherty, M.A., Alexandria Deas, BS, and

17   Brenda Havellana, Ph.D. *Id.* at 5. Plaintiff alleges that the ALJ repeatedly misread or

18   mischaracterized evidence, "cherry picked" evidence, improperly assessed medical opinions, and

19   ignored the ramifications of Plaintiff's impairments. *Id.*

20        An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

21   opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th

22   Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even

23   when a treating or examining physician's opinion is contradicted, an ALJ may only reject that

24   opinion "by providing specific and legitimate reasons that are supported by substantial

25

1  evidence." *Id.* It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on*

2  *Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted)

3  (emphasis in original). The ALJ must only explain why "significant probative evidence has been

4  rejected." *Id.*

5      When evaluating opinions from non-acceptable medical sources an ALJ may expressly

6  disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so."

7  *Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*citing Lewis v.*

8  *Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. § 404.1502.

9      The ALJ assigned little weight to the April 2015 opinion of Plaintiff's primary care

10  physician, Dr. Vandermeer. AR 23. In March 2014, Dr. Vandermeer noted that Plaintiff was

11  "strongly affected" by his "intractable" tinnitus, which was causing increasing levels of anxiety

12  and depression. AR 335. In April 2015, Dr. Vandermeer re-iterated his opinion, stating that

13  because of Plaintiff's "chronic, severe, and intractable" tinnitus, he would have moderate to

14  severe limitations in his ability to perform work-related activities. AR 521. Dr. Vandermeer

15  stated that the Plaintiff suffers "crippling" anxiety secondary to his tinnitus that would make it

16  difficult for Plaintiff to interact appropriately in workplace and social settings. AR 521.

17      In a medical source statement, Dr. Vandermeer opined that Plaintiff had marked

18  limitations in his ability to complete a normal workday and workweek without interruption from

19  psychologically based symptoms and to perform at a consistent pace without an unreasonable

20  number and length of rest periods. AR 522-523. Dr. Vandermeer further assessed marked

21  limitation in the claimant's ability accept instructions and respond appropriately to criticism from

22  supervisors and get along with coworkers or peers without exhibiting behavioral extremes. AR

23  522-523.

24

25

1    The ALJ similarly assigned little weight to the April 2015 opinion of Patrick Dougherty,

2    MA, a mental health counselor. AR 23. Mr. Dougherty treated Plaintiff from November 2014

3    through March 2016. AR 770-835. Mr. Dougherty noted that Plaintiff's primary medical

4    condition is tinnitus, which interferes with his functioning and is the cause of his depression and

5    anxiety. AR 770. Mr. Dougherty assessed Plaintiff as having a range of extreme work-related

6    mental limitations in understanding and memory, extreme limitations in sustaining concentration

7    and persistence, and a variety of marked and extreme limitations with respect to social

8    interaction and adaptation. AR 514-515.

9         The ALJ also gave little weight to the June 2016 opinion of Alexandria Deas, BS, a

10    master's degree candidate who began seeing Plaintiff in April 2016. AR 23, 682. Ms. Deas

11    opined that Plaintiff and that Plaintiff had high potential for attempting suicide or other self-harm

12    behaviors. AR 682. Ms. Deas also suggested that the stresses of work may exceed Plaintiff's

13    capacity for protective factors such as faith and family. AR 682. In a treating source statement,

14    Ms. Deas opined that Plaintiff was unable to perform a range of designated tasks or function on a

15    regular, reliable, and sustained schedule, including maintaining attention and concentration for

16    extended periods of time, working in coordination without proximity to others without being

17    distracted by them, completing a normal workday and workweek without interruption from

18    psychologically based symptoms, and travelling in unfamiliar places or using public

19    transportation. AR 682-684.

20         The ALJ also gave little weight to the June 2016 opinion of Dr. Grover. AR 23. In his

21    opinion, Dr. Grover drew a connection between Plaintiff's tinnitus and his mental impairments,

22    categorized his tinnitus as "catastrophic", and opined that Plaintiff would be unable to perform

23    even basic work activities on a full-time basis due to tinnitus. AR 674-675. Dr. Grover opined

24

25

1    that Plaintiff would need to take unscheduled breaks during a workday, would be incapable of

2    doing even "low stress" jobs and would be absent from work more than four days per month

3    because of his tinnitus. AR 674-675. Dr. Grover also stated that Plaintiff's tinnitus prevented him

4    from performing even simple daily tasks. AR 676.

5         In June 2016, Dr. Grover submitted a statement that is virtually identical to the statement

6    submitted by Dr. Vandermeer in April 2015. AR 521, 650. Dr. Grover again opined that due to

7    Plaintiff's "chronic, unremitting, intractable" tinnitus Plaintiff has severe limitations in his ability

8    to perform work-related activities. AR 650. Dr. Grover re-iterated Dr. Vandermeer's assessment

9    that Plaintiff suffers "crippling" anxiety secondary to his tinnitus that would make it difficult for

10   Plaintiff to interact appropriately in workplace and social settings. AR 650.

11        In assigning little weight to these examining sources, the ALJ reasoned:

12       The marked to severe mental health limitations assessed by Dr. Vandermeer, Mr.
         Dougherty, and Ms. Deas is inconsistent with the overall medical evidence of
13       record. In fact, the claimant has indicated that the primary reason he was unable to
         work was his tinnitus and that he would be able to function normally if his
14       tinnitus improved. This indicates his mental health is not disabling. In addition,
         treatment notes show improvement in mental health symptoms with medication.
15       Mental status exams show mostly intact cognitive functioning. The undersigned
         notes that Dr. Vandermeer's treatment notes document improvement in symptoms.
16       He also frequently advised the claimant to follow-up with Psychiatry. The record
         indicates a one-time psychiatric evaluation in October 2015 but no follow-up
17       since that time.

18   AR 23.

19        Plaintiff alleges that his tinnitus is the primary reason he cannot work, and that his mental

20   impairments are caused by his tinnitus. Plaintiff alleges that he experiences anxiety that causes

21   him to suffer from panic attacks, nausea, and vomiting. AR 244-245, 472. In a function report

22   from November 2014, Plaintiff stated that his tinnitus caused him to have anxiety 24 hours a day,

23   and that his mind and thoughts were "consumed" by tinnitus. AR 244-245. In a third-party

24

25

REPORT AND RECOMMENDATION - 11

function report completed at the same time, Plaintiff's fiancée also alleged that Plaintiff's

tinnitus has caused him to be depressed and that he has "constant" anxiety over the ringing in his

ears. AR 256, 263. Plaintiff's fiancée re-stated these allegations in May 2015. AR 295-296, 298-

299. At a mental health assessment in November 2014, Plaintiff again stated that his mental

health problems were being caused by his tinnitus. AR 448, 455. During a psychological

evaluation in December 2014, Plaintiff stated that his tinnitus was the primary reason why he

could not work. AR 507. In two statements from December 2014, Plaintiff again alleged that his

tinnitus was the primary reason he could not work, was ruining his life, and was the cause of his

mental health problems. AR 287-288.

Persuasive authority from other Circuits suggests that when a Plaintiff alleges that his

mental impairments are caused or significantly exacerbated by tinnitus, an ALJ may disregard

disabling mental limitations assessed by a treating psychiatrist if those limitations are based on

subjective tinnitus allegations that are not consistent with the record. *See Gaddis v. Chater*, 76 F.

3d 893, 896 (8th Cir. 1996). The ALJ's finding that Plaintiff's subjective tinnitus allegations

were not consistent with the minimal objective findings or Plaintiff's activities of daily living is

supported by clear and convincing reasons. As such, the ALJ did not err in assigning little weight

to opinions that relied partly or entirely on these allegations when assessing Plaintiff's mental

limitations.

Further, Plaintiff's allegations concerning disabling anxiety are not consistent with his

activities of daily living. The ALJ found that Dr. Grover's statement that Plaintiff was unable to

perform simple tasks was inconsistent with Plaintiff's own self-described activities of daily

living, including cleaning, preparing meals, and shopping for groceries. AR 23-24, 42, 74-75,

511, 570. The ALJ also correctly found that Plaintiff's anxiety was receptive to treatment. AR

21-22. In October and November 2014 Plaintiff stated that his anxiety improved after taking Xanax. AR 431, 472. In December 2014, Plaintiff stated that he was reducing the dose of Xanax and instead taking Olanzapine, which he stated had given him the greatest benefit of the medications he had taken for his anxiety. AR 626-627. In April 2015, Plaintiff stated that he received some benefit from Zyprexa. AR 630. In July and September 2015, Plaintiff noted a decrease in his anxiety and panic attacks and an improvement in sleep and mood after taking Effexor. AR 636, 640.

The ALJ has provided clear and convincing reasons for assigning little weight to the opinions of Plaintiff's treating and examining sources regarding his mental impairments. Plaintiff's mental health allegations are based primarily on his subjective allegations concerning his tinnitus, which are not supported by the record. The ALJ also correctly found that Plaintiff's mental health symptoms were receptive to medication and that his allegations of disabling mental health symptoms were not consistent with his activities of daily living.

Plaintiff also suggests that the ALJ erred in his evaluation of Dr. Havellana's opinion. Dkt. 8, p. 13. Dr. Havellana conducted a consultative psychological examination of Plaintiff in December 2014. AR 507-513. Dr. Havellana found that Plaintiff's ability to understand, remember, and follow simple and more complex directions was adequate, that Plaintiff's abstract reasoning abilities were within normal limits, and that his ability to maintain attention and concentration was average. AR 512. Dr. Havellana found that Plaintiff would face moderate challenges in maintaining consistent and successful engagement in a full-time competitive work setting. Dr. Havellana again noted Plaintiff's contention that his tinnitus was the cause of his anxiety and the primary factor impacting his ability to work, but stated that an assessment of Plaintiff's tinnitus was beyond the scope of her psychological evaluation. AR 512.

1    The ALJ assigned partial weight to Dr. Havellana's overall opinion, noting that it was

2 consistent with the normal findings during her mental status examination. AR 24. However, the

3 ALJ assigned no weight to Dr. Havellana's assessment regarding Plaintiff's tinnitus, reasoning

4 that Dr. Havellana herself admitted that the impact of Plaintiff's tinnitus on his vocational

5 engagement was outside the scope of her expertise. AR 24. Much like the other examining

6 sources, Dr. Havellana's opinion about Plaintiff's mental limitations is, by her own

7 acknowledgment, based largely on Plaintiff's subjective allegations concerning his tinnitus.

8 Because those allegations have been properly discounted, the ALJ gave clear and convincing

9 reasons for assigning partial weight to Dr. Havellana's opinion.

10    Despite properly discounting Plaintiff's allegations concerning the severity of his tinnitus

11 and related mental complaints, the ALJ assessed a range of significant work-related limitations to

12 accommodate Plaintiff's mental impairments. The ALJ included a limitation that Plaintiff would

13 be off task for up to ten percent of a workday due to his alleged concentration difficulties and

14 found that Plaintiff would have five unexcused absences per year. AR 19, 25. The ALJ also

15 found that Plaintiff was only capable of engaging in unskilled, repetitive routine tasks for two-

16 hour increments, was limited to superficial, incidental contact with the public, could work in

17 proximity to, but not in coordination with co-workers, and was limited to occasional contact with

18 supervisors. AR 19. Despite these significant limitations, the vocational expert testified that there

19 would still be a significant number of light, unskilled jobs Plaintiff could perform at step five of

20 the sequential evaluation. AR 25-26, 101-102.

21

22

23

24

25

1

IV.    <u>CONCLUSION</u>

2

3       Based on the foregoing discussion, the undersigned recommends that the Court find the

4  ALJ did not err in determining plaintiff to be not disabled, and therefore that it affirm the ALJ's

   decision to deny benefits.

5
        The parties have **fourteen (14) days** from service of this Report and Recommendation to

6  file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP)

7  72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for

8  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation,

9  this matter shall be set for consideration on **June 5, 2019**, as noted in the caption.

10       Dated this 22nd day of May, 2019.

11

12

13

14  Theresa L. Fricke
    United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25